UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DANIEL K. MONKO,

                                    Petitioner,

              -against-

DANIEL SENKOWSKI, Superintendent,
Clinton Correctional Facility,

                                    Respondent.
-------------------------------------------------------X

**MEMORANDUM & ORDER**
Civil Action No. 97-2895

**APPEARANCES:**

For Petitioner:
        Daniel K. Monko, Pro Se
        87-A-4441
        Elmira Correctional Facility
        1879 Davis St,
        P.O. Box 500
        Elmira, New York 14901-0500.

For Respondent:
        Suffolk County District Attorney's Office
        Criminal Courts Building
        200 Center Drive
        Riverhead, New York 11901
        By:    Marcia R. Kucera,  Esq., A.D.A.

**HURLEY, Senior District Judge:**

        Daniel Monko ("petitioner" or "Monko"), proceeding pro se, petitions this

Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, vacating his

judgment of conviction  rendered on May 7, 1987 in the County Court in the State of

New York, County of Suffolk for two counts of Rape in the First Degree, one count of

Burglary in the Second Degree and one count of Forgery in the Second Degree. For

the reasons set forth below, the petition is denied.

# BACKGROUND

The crimes underlying Petitioner's conviction were the September 21, 1985 rape of Suzanne Harwell, the September 28, 1985 removal of a bicycle from a garage, and signing a statement under oath as "Daniel Crawford" when in custody of the police. The Indictments were consolidated for purposes of trial.

Petitioner first approached Ms. Harwell in the parking lot outside a nightclub called "Shadows" during the early morning of September 21, 1985 asking her for assistance with respect to his car, but was rejected. Later, when Ms. Harwell was walking home, petitioner ran up to her, grabbed her from behind, pulled her by her hair into the nearby woods, and hit her repeatedly with a piece of plywood on her left arm. Petitioner then pushed Ms. Harwell into his car and drove off. When they reached an open field shielded by bushes, he first forced vaginal penetration with Ms. Harwell in the front seat of the car, and later again on the open field.

Ms. Harwell did not immediately report the incident to the police. After returning home, she spoke with her parents, cleaned up, and she went to work. Later she spoke with a friend who encouraged her to go to a hospital. She then left work early and, with her parents, went to a local hospital where she was examined and a rape kit performed.

On September 28, 1985, Monko was seen removing a bicycle from a residence. He was restrained and, when the police arrived, he was arrested for burglary. During the arrest process, Monko identified himself, and signed a fingerprint card with the name "Daniel Crawford."

Petitioner was arrested, indicted and subsequently convicted of two counts of rape in the first degree, one count of burglary in the second degree, and one count of forgery in the second degree. Monko did not dispute having intercourse with Ms. Harwell, but claimed that it was consensual.

Prior to trial, petitioner sought a *Sandoval*[1] hearing seeking to preclude the prosecution from cross-examining him about his criminal history, which consisted of the following:

- Burglary in the Second Degree, charged on August 23, 1976, for entering a residential dwelling at night. Petitioner pled guilty to Petit Larceny and was sentenced, as a youthful offender, to three years probation;

- Burglary in the Third Degree, charged on October 6, 1976, for entering an auto parts store and stealing cash and an attaché. Petitioner pled guilty to Petit Larceny and was sentenced, as a youthful offender, to a definite term of incarceration of one year;

- Burglary in the Third Degree, charged on October 18, 1976, for entering a restaurant and stealing food and beer. Petitioner pled guilty to Attempted Burglary in the Third Degree and was sentenced, as a youthful offender, to a definite term of incarceration of one year;

- Burglary in the Third Degree, charged on October 22, 1976, for entering a car dealership and stealing a car. Petitioner pled guilty to Attempted Grand Larceny in the Third Degree and was sentenced, as a youthful offender, to a definite term of incarceration of one year (a warrant had been issued on this charge as petitioner had fled to Philadelphia);

- Escape in the Second Degree, charged on July 1, 1977, for escaping

---

[1] In *People v. Sandoval*, 34 N.Y.2d 371 (1974) the New York Court of Appeals established a procedure available to defendants to obtain a prospective ruling as to which portions of a defendant's prior record can be used at trial by the prosecution for impeachment should the defendant testify.

from custody and remaining at large for eleven days. Petitioner pled guilty to Escape in the Second Degree and was sentenced, as a youthful offender, to a definite term of incarceration of thirty days;

- Burglary in the Second Degree and Grand Larceny in the Third Degree, charged on March 12, 1977, for entering a residence and stealing two rifles, a pellet gun and a guitar. Petitioner was arrested in March 1978 and, in February 1979, after pleading guilty to Grand Larceny in the Third Degree (a warrant had been issued on this charge as petitioner had fled to California), he was sentenced to an indeterminate term of incarceration of zero to three years;

- Kidnaping and Sexual Perversion in California, charged on June 8, 1978, for forcibly abducting a female who had picked him up while hitchhiking, transporting her to a second location and forcing her to commit oral sodomy. He pled guilty to Sexual Perversion under §§288(a) and 207 of the California Youth Act and was sentenced to a term of incarceration of zero to three years concurrent to charges then unresolved in New York;

- Two counts of Criminal Possession of Stolen Property in the First Degree, charged on January 10, 1983, for stealing and possessing a van and furniture worth more than $1,500. Petitioner pled guilty to one count of Criminal Possession of Stolen Property and was sentenced, as a prior felony offender, to an unspecified indeterminate term; and

- Burglary in the Third Degree, charged on March 23, 1983, for breaking into an auto shop. Petitioner pled guilty to Burglary in the Third Degree and was sentenced, as a prior felony offender, to an indeterminate term of incarceration of two to four years.

The trial court permitted the prosecutor's cross-examination of petitioner as to his larcenies on the ground they were demonstrative of petitioner's inability to act within the framework of society and his propensity to place his own self-interest above those of society. The prosecution was precluded, however, from referencing the California Kidnaping and sexual perversion charges and petitioner's flight from several charges on the grounds of undue prejudice .

## Procedural History

On August 8, 1986, Petitioner was found guilty of two counts of Rape in the first degree, one count of burglary in the second degree, and one count of forgery in the second degree. He was sentenced on May 7, 1987, as a persistent felony offender as follows: an indeterminate term of incarceration of twenty-five to life on the two counts of rape in the first degree; an indeterminate term of twenty-five years to life on the count of burglary in the second degree; and an indeterminate term of fifteen years to life on the count of forgery in the second degree.

Thereafter, Petitioner appealed to the Appellate Division, Second Judicial Department, which affirmed Petitioner's convictions. *See People v. Monko*, 162 A.D.2d 553 (2d Dept. 1990). Petitioner's leave to appeal was subsequently denied by the New York Court of Appeals. *See People v. Monko*, 76 N.Y.2d 861 (1990). In April 1992, the Appellate Division denied Petitioner's motion to reargue his appeal. On January 22, 1999, Petitioner filed a motion to vacate his conviction, pursuant to New York Criminal Procedure Law ("CPL") §440.10 before the County Court of Suffolk County, which was denied in April 1999, as was Petitioner's motion to reargue the application. On October 28, 2005, Petitioner filed a motion for a Writ of Error Coram Nobis with the Appellate Division, arguing the ineffective assistance of appellate counsel. The Appellate Division denied Petitioner's application, *People v. Monko*, 44 A.D. 3d 878 (2d Dept. 2007), as did the Court of Appeals, *People v. Monko*, 9 N.Y.3d 1036 (2008).

On April 15, 1997, Petitioner filed this action seeking a writ of habeas corpus.

On March 18, 1998, the petition was dismissed as untimely. Thereafter, on April 7, 2008, the Court granted Petitioner's motion to vacate and reinstated the petition due to intervening authority by the Court of Appeals for the Second Circuit, *see Ross v. Artuz*, 150 F.3d 97 (2d Cir. 1998), rendering the petition timely. On July 15, 2008, Petitioner moved to amend the petition to assert only the following two grounds: 1) "Trial court's SANDOVAL ruling denied Petitioner's constitutional right to present defense, due process of law, and right to a fair trial;" and 2) "Petitioner was denied his six amendment rights to effective assistance of counsel on direct appeal." (Amended Petitioner, DE 33-2, at pp. 6-7). The motion to amend was granted. By affirmation filed on January 23, 2009, petitioner sought permission to withdraw the *Sandoval* issue (ground one). (Reply Affirmation, DE 50, at ¶ 4.) That application was granted by Order filed April 24, 2009.

As presently constituted, petitioner asserts he entitled to habeas relief because his appellate counsel was ineffective (1) for failing to challenge the trial court's admission of the "prompt outcry" testimony of Harwell's parents; (2) because instead of raising the nine issues that were raised on appeal, counsel should have focused on the admission of the prompt outcry testimony and the *Sandoval* ruling; and (3) for failing to include the transcript of Part II of the persistent felony offender hearing.

**DISCUSSION**

## I.     Legal Standard -  Habeas Corpus and the AEDPA

A federal court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(b)(1).   In order to obtain relief, an individual in custody must demonstrate, inter alia, that he has: (1) exhausted all of his State remedies; (2) asserted his claims in his State appeals such that they are not procedurally barred from federal habeas review; and (3) if his appeals were decided on the merits, overcome the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Philbert v. Brown*, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012)**.**

Under the AEDPA, a writ of habeas corpus shall not be granted on a claim that was "adjudicated on the merits" in the state court unless that state court's decision was "contrary to," or involved an "unreasonable application" of "clearly established Federal Law" as determined by the United States Supreme Court or "was based on an unreasonable determination of the facts" in light of the evidence presented to the state court.  28 U.S.C. § 2254 (d); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).   "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment."  *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the [United States] Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a United States Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotation marks and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. (internal quotation marks and citation omitted).

Under the AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (internal quotation marks omitted).

## II.     Legal Standard - Ineffective Assistance of Counsel

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the assistance of Counsel for his defense." U.S. Const. amend. VI. Claims of ineffective assistance of counsel are governed by *Strickland v.*

*Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Id.* at 687; *see Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002).

Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730. Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Moreover, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

9

And courts should not "second-guess reasonable professional judgments and impose . . . a duty to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case viewed as of the time of counsel's conduct, . . . and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528 (2d Cir. 1994) (internal quotation marks and citations omitted).

## III.    Discussion of Grounds Advanced in Habeas Petition

Having been appropriately exhausted, the three instances of ineffective assistance of appellate counsel advanced by petitioner, as previously identified, will now be addressed.

### A.    Failure to Challenge the Admission of Parent's Testimony Under the Prompt-Outcry Rule

The Court will first evaluate whether the prompt-outcry issue was "significant and obvious," such that appellate counsel's failure to raise it on direct appeal was "objectively unreasonable," and that absent such failure "there was a reasonable probability that Petitioner's appeal would have been successful." Strickland, 466 U.S. at 686-96 (1984).

In New York, evidence that a victim of sexual assault promptly complained about the incident is admissible as an exception to the hearsay rule to corroborate the allegation that an assault took place. *People v. McDaniel*, 81 N.Y.2d 10, 16 (1993) ("The prompt outcry rule — an exception to the inadmissibility of the prior

consistent statements of an unimpeached witness — permits evidence that a timely complaint was made, but does not allow further testimony as to the details of the incident."). "A complaint is timely for purposes of the prompt outcry exception if made at the first suitable opportunity." *Id*. at 17 (citations and internal quotation marks omitted). Historically, the doctrine evolved from the common-law requirement of "hue and cry," where all victims were required to prove they immediately alerted the community that a crime had occurred. *Id*. The contemporary rationale for permitting prompt outcry evidence is that some jurors would inevitably doubt the veracity of a victim who failed to promptly complain of a sexual assault, since they regard such conduct as "natural" for an "outraged female." *People v. Rice*, 75 N.Y.2d 929, 931(1990).

There are, however, two limitations on the admissibility of such evidence. *McDaniel*, 82 N.Y.2d at 17. One is that "the complaint must have been made promptly after the crime, and another is that only the fact of a complaint, not its accompanying details, may be elicited." *Id*. For example, detailed description of the perpetrator as related to another by the complainant may not be admitted at trial under the prompt-outcry exception to hearsay. *See Rice*, 75 N.Y.2d, at 932. Neither can a prompt-outcry witness testify at trial regarding the manner in which the complainant was sexually assaulted. *See People v. Derrick*, 96 A.D.2d 600, 600 (1983) (the trial court erroneously admitted the testimony as to a conversation with one of the complainants, in which the complainant described the manner in which

she had been orally sodomized by the defendant). However, the witness can go beyond solely answering "yes" to the question of whether a complaint was made, and the prosecutor can elicit the nature of the complaint. *See McDaniel*, 81 N.Y.2d at 18 ("the prosecutor was entitled to elicit the nature of the complaint, which was not apparent from the context"). For example, testimony that the victim "reported being bothered, attacked, molested" did "not exceed the allowable level of detail" under prompt-outcry exception. *Id.*

Petitioner argues that the second limitation was violated when complainant's parents "were permitted to testify about prejudicial details leading up to the alleged rape, as related to them by their daughter." (*See* Amended Petition, DE 33-2, at 18).

At trial, Harwell's mother gave the following relevant testimony:

> Q. (Prosecutor) Now, could you describe what happened as you, as the three of you were sitting there in the den? What was the conversation that took place?
>
> A: (Mary Harwell) She was sitting there. Her jacket sort of open when she was sitting down, and I noticed her blouse was torn as if it had been pulled, and the buttons had, all the buttons where the material was all torn, and her father - she was crying very hard, and her father said to her "come on. Try to tell me what happened to you." So she started to tell him this man had approached her in the parking lot. She was walking down to telephone us.
>
> DEFENSE COUNSEL: Objection
>
> (whereupon the following took place at side bar.)
> THE COURT: I assume your objection is to the hearsay.
>
> DEFENSE COUNSEL: Yes, Judge. I understand we are

dealing with an early outcry situation, but rather than go through the details -

THE COURT: Well, I would suggest that normally, the only exception to a hearsay statement like this as the witness has already testified would be an allegation of recent fabrication. However, in sex crime, there is a recognized exception of immediate outcry or early outcry, and thus far, from the testimony we have heard, this is the first person, the mother and father are the first persons she came into contact with. So for that reason, I will permit the line of testimony.

DEFENSE COUNSEL: Exception noted.

(whereupon the following took place in open court)
Q: At that time then, what did Suzanne start to relate to you at that time?

A: She started to relate that she had been attacked, someone had beaten her with a stick and she had been attacked.

THE COURT: One second please. Could you read back that answer?

(whereupon the reporter read back as requested)

THE COURT: Would you please keep your voice up, Mrs. Harwell, so the parties can hear you?

THE WITNESS: Yes.

Q: Now, after she said those things, what happened next?

A: My husband said to her "have you been raped?" and she said "Yes."

Trial Tr. at 208 -10.

Thereafter, Harwell's father testified in relevant part as follows:

Q: (Prosecutor) Could you describe when you were on the

couch there in the den, could you describe what took place?

A: (William Harwell) I was asking - trying to calm my daughter down, I was asking here what happened. She started to tell me she had been at a discotheque, and on the way out, she had been asked by someone to help him start his car, and then she proceeded to tell me she refused and that she was walking home. The same individual drove up behind her, and attacked her.

Q: After that?

A: Later on, I - Shortly after that, I asked her "Did he rape you?" And she said "Yes."

Trial Tr. at 231.

Based on the transcript provided, the testimony of complainant's parents was properly admitted under prompt-outcry exception at trial. The testimony did not go into the details of the sexual assault, but rather provided a cursory description of the events leading up to the incident of rape. Like the challenged testimony in *McDaniel*, where the mother of complainant related that "her daughter reported being bothered, attacked, molested," 81 N.Y.2d at 18, here, complainant's parents related that their daughter reported being attacked and raped. Therefore, the testimony here is likewise found to "not exceed the allowable level of detail" under the prompt-outcry exception. *Id*.

The testimony here is distinguishable from those cases in which the court held the permissible bounds of prompt outcry testimony were exceeded. *Cf. Rice*, 75 N.Y.2d, at 932 (detailed description of the perpetrator was improperly admitted); *Derrick*, 96 A.D.2d at 600 (witness was erroneously permitted to relate a detailed

description of oral sodomy at trial). Here, complainant's parents' testimony that Harwell reported to them that she was both beaten and raped fell within this permitted sphere as enunciated in the foregoing cases. Additionally, the parents properly testified as to their own observations of Harwells' physical appearance and emotional demeanor. Since the testimony of complainant's parents was not erroneously admitted, appellate counsel's choice to not raise this issue on direct appeal was not "objectively reasonable." *Strickland v. Washington*, 466 U.S. 668,686 (1984).

Viewed through the prism of the AEDPA's deference standard, this Court cannot say that the New York court's rejection of Monko's claim that his appellate counsel was ineffective for failing to challenge the admissibility of the prompt outcry testimony on appeal is contrary to, or an unreasonable application of, clearly established Supreme Court law.

### B. Failure to Focus on the Admissibility of the Prompt Outcry Testimony and the *Sandoval* Ruling

Turning to the second assert ground for habeas relief, to wit: appellate counsel should have focused on the admissibility of the prompt outcry testimony and the *Sandoval* ruling rather than the nine issues raised on appeal,[2] it does not

---

[2] The nine issues raise by counsel on appeal were (1) the New York rape shield law violates the constitutional right of confrontation; (2) the trial court abused its discretion as a matter of law in granting the motion for consolidation; (3) the *Sandoval* ruling was an abuse of discretion; (4) the trial court erroneously denied suppression of two telephone calls made by Monko to the police; (5) the police's failure to preserve evidence that might be potentially useful to defendant was in bad faith and violated the Fourteenth Amendment; (6) the improper

provide a basis for habeas relief.

It is important to note that appellate counsel did in fact challenge the *Sandoval* ruling on appeal and that ground was rejected by the New York courts.[3] That fact, together with this Court's conclusion that the prompt outcry testimony fell within the permitted sphere under New York law, when justapositioned against the standard for granting habeas relief requires rejection of the claimed ineffective assistance of counsel claim.

**C.    Failure to Include the Transcript of Part II
        of the Persistent Felony Offender Hearing**

The final claim to be addressed is Monko's assertion that appellate counsel was ineffective for failing to include the transcript of Part II of the Persistent Felony Offender Hearing.

By way of background, Monko was sentenced as a persistent felony offender (PFO) pursuant to N.Y. Penal Law § 70.10.  In general, that statute provides that a defendant who stands convicted of a felony after having previously been convicted of

---

bolstering of the prosecution's medical witness was not harmless error; (7) the alleged victim's testimony was incredible as a matter of law; (8) proof of guilt was not so overwhelming as to render alleged errors harmless; and (9) the sentence should be reduced in the interest of justice.

[3]The Court notes, parenthetically, that in his pro se memorandum in support of his motion for a writ of error coram nobis petitioner characterized appellate counsel's challenge to the *Sandoval* ruling as having "little or no chance of success on appeal" given that "a fair review of the hearing minutes shows that the Court comprehensively weighed all of the competing considerations and rendered a <u>Sandoval</u> ruling that was well within it's wide range of discretion." (Memorandum of Law to Appellate Division Second Department in Support of Motion for Writ of Error Coram Nobis at p. 20.)

two or more felonies may in the judge's discretion receive an indeterminate sentence corresponding to that of a class A-1 felony. The procedure to be followed in determining whether to impose a PFO sentence is set forth in the N.Y. Criminal Procedure Law § 400.20. "Pursuant to that provision, the prosecution must first prove beyond a reasonable doubt that the defendant is a PFO—that is, that he has previously been convicted of two or more qualifying felonies—before an enhanced sentence is authorized. . . . But the court is also directed to engage in a second inquiry, and to assess whether a PFO sentence is warranted before imposing such a sentence, taking into consideration the 'history and character' of the defendant and the 'nature and circumstances of his criminal conduct.' " *Portalatin v. Graham*, 624 F.3d 69, 74 (2d Cir. 2010) (citing N.Y. Crim. Proc. Law § 400.20(1), (5)). In undertaking the second inquiry, the court may schedule a hearing at which the prosecution and defendant are given an opportunity to present evidence as to whether a class A-1 sentence is warranted. The hearing on facts relating to the defendant's history and character and the nature and circumstances of his criminal conduct may guide the discretion of the sentencing court in determining whether the enhanced term is warranted under the second prong of the PFO law. *See People v. Rivera*, 5 N.Y.3d 61, 68 (2005). However, the hearing "does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's opinion." *Id.* If the sentencing court imposes a class A-1 sentence, its

reasons for doing do must be set forth in the record.  N.Y. Penal Law § 70.10(2).[4]

In the present case, after it was determined that Monko had previously been convicted of two or more qualifying felonies, the trial court held a hearing on the second inquiry.  Monko asserts that at this hearing he presented extensive evidence to challenge the PFO sentence, but appellate counsel did not submit the hearing transcript as part of the appeal, thus undercutting the argument that the sentence was unreasonable and rendering appellate counsel's assistance ineffective.

Even assuming counsel's failure to procure part II of the PFO hearing constituted deficient performance, there was no reasonable probability that petitioner's appeal would have been successful, i.e. that any deficient performance caused prejudice. Despite his presence at the PFO hearing, Petitioner merely names the type of evidence presented during the hearing, such as his education and employment records and efforts towards rehabilitation.  He fails, however, to offer any detail as to how or what particular evidence presented at the hearing could have changed the outcome of the appellate review.

Moreover, the availability of the missing transcripts pertains to the sentencing decision of the trial court, the review of which by an appellate court is subject to review only under an abuse of discretion standard. *See,e.g., People v. Pagan*, 304 A.D.2d 980 (3d Dept. 2003); *People v. Caputo*, 13 A.D. 2d 861 (3d Dept.

---

[4] The Second Circuit has held that New York's persistent felony statue does not violate the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010).

1961). From a review of the transcript of the trial court's decision on the PFO

hearing and sentencing, it is apparent that the sentencing judge took account of

petitioner's demonstrated intelligence in the sentencing decision, but was

unpersuaded by his rehabilitative efforts and concerned with the danger he posed to

the general public. In imposing sentence, the trial court stated in pertinent part:

> I mentioned before that it's obvious that the
> defendant is an intelligent person. He's taken advantage
> of all of the vocational educational opportunities available
> to him while he's been incarcerated, and I dare say he will
> probably do the same.
>
> I don't know what is the malfunction in his mind or
> his psyche. It's obvious that - - or at the last thirteen or
> fourteen years there is something clearly wrong. Whether
> it is a chemical many [sic] imbalance or emotional
> problem, I don't know what it is. I don't claim to be a
> psychiatrist. I'm certainly not a priest. There is no way I
> can diagnose why it is that Daniel Monko is what he is,
> and that is a persistent felony offender.
>
> I believe that he has demonstrated that there will
> always be pressures. Certainly, in his status as a
> convicted criminal, his opportunities will be limited
> among his fellow citizens. There will always come a time
> when there are pressures mounting for him for whatever
> reason, which tend to suggest to him there is only one
> way out, and it seems like every time the pressures have
> been there . . he then does whatever at the spur of the
> moment seems best to him. That's the problem. That's
> the problem I have to resolve here, to see that the people
> he associates with in Suffolk County and the State of New
> York are not subject to his predatory actions.
>
> . . .
> I suggest that the defendant at this point cannot be
> trusted, and I don't care if he becomes a rocket scientist, if
> he's in prison and he gets his Ph.D., if he assembles the
> most complicated computer known to man, these are
> accomplishments which he may be able to achieve.
>
> Nonetheless, there is something there that I cannot
> condone. That is that there is an imbalance which makes

> him unsafe on the street. I will not be the one that gives him the opportunity to prey upon other people in the future. . . .
>
> I consider Daniel Monko the kind of person you can sit down with and have an intelligent conversation on any subject, but there is something there, and that something is what cries out for him to be sentenced as a persistent felony offender.

May 7, 1987 Tr. at 31-33.

Since "the imposition of sentence is within the discretion and judgment of the sentencing court and an appellate court will not interfere with such discretion except under most extraordinary circumstances which do not here exist," *id.*, and Monko had no "legal entitlement" to have facts deduced at the Part 2 hearing receive "controlling weight," *Rivera*, 5 N.Y.2d at 68, it is unlikely that the appellate court would have reduced petitioner's sentence, even if the transcript of part II of the PFO hearing were made available for review. Therefore, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent counsel's failure to procure the missing transcript. *See Strickland*, 466 U.S. at 690. The Appellate Division's rejection of Monko's assertion that counsel's failure to include the transcript of Part 2 of the PFO hearing constituted ineffective assistance of counsel was not contrary to or an unreasonable application of federal law.

## CONCLUSION

Having considered all of petitioner's arguments and finding them to be without merit, the petition for habeas corpus relief is denied. Additionally, no

certificate of appealability will issue because Monko has failed to make a

substantial showing of the denial of a constitutional right as required by U.S.C. §

2253(c)(2). The Clerk of Court shall enter judgment accordingly.

**SO ORDERED.**

Dated: Central Islip, New York
     January 29, 2016                   /s/  Denis R. Hurley\_\_\_\_\_
                                        Denis R. Hurley
                                        District Judge